IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SCOTTY ARTHUR,                          :
                                        :
    Plaintiff,                          :
                                        :
vs.                                     :    CIVIL ACTION 10-0040-M
                                        :
MICHAEL J. ASTRUE,                      :
Commission of Social Security,          :
                                        :
    Defendant.                          :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits. The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 30). Oral argument was waived in this action (Doc. 26). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED**, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Scotty

Arthur.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-seven years old, had completed three semesters of college (Tr. 29-30, 34), and had previous work experience as a chemical operator and an assistant restaurant manager (Tr. 30-32). In claiming benefits, Plaintiff alleges disability due to bilateral knee osteoarthritis and affective depressive disorder (Doc. 25).

The Plaintiff filed an application for disability benefits on November 6, 2007 (Tr. 103-07). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Arthur could not do his past relevant

2

work, he was capable of performing specified jobs within the reduced range of sedentary level work (Tr. 7-20).  Plaintiff requested review of the hearing decision (Tr. 5-6) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Arthur alleges that:  (1) The ALJ erred in finding that he could ambulate effectively; and (2) the ALJ did not properly consider his complaints of pain (Doc. 21).  Defendant has responded to—and denies—these claims (Doc. 22).  The evidence of record follows.

Arthur underwent arthroscopic surgery on his right knee on July 2, 2004 by Dr. Albert Haas, Orthopaedic Surgeon (Tr. 265). Following an on-the-job injury while working to put out a fire, Plaintiff underwent surgery, on September 16, 2005, by Dr. Haas who repaired a torn ACL and medial meniscus in the left knee (Tr. 217-18).

Plaintiff was admitted to Providence Hospital on May 23, 2007 by Dr. Haas for arthroscopic surgery on the left knee (Tr. 179-84).  On June 7, Haas, in office records, noted that Arthur had some pain with ambulation at times though he was doing well overall; he had good range of motion (hereinafter *ROM*) with no significant calf tenderness or swelling (Tr. 331).  The Surgeon

instructed Plaintiff to go to physical therapy (hereinafter *PT*) three times a week for three weeks, but that he should do no repetitive squatting, kneeling, climbing, stair climbing, or ladders; a sedentary desk job was all that Plaintiff was capable of doing at that time (Tr. 331). Three weeks later, Haas ordered three more weeks of aggressive PT; Arthur could return to work, but was restricted from stairs, squatting, and kneeling (Tr. 329). On July 19, the doctor noted that Plaintiff had fallen on his left knee two days earlier which had a superficial abrasion; Arthur was to continue PT and work with the earlier noted restrictions (Tr. 328). Mobic[1] and Tylox[2] were prescribed. On August 9, Dr. Haas noted that Plaintiff's left knee had given way the night before and that he was having to walk with crutches; the doctor gave Arthur a knee immobilizer and told him not to work for two weeks (Tr. 327). On August 23, 2007, the Orthopaedic stated that Plaintiff needed to mentally toughen up and return to light duty work; Haas prescribed Naproxen[3] (Tr.

---

[1] **Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[2] **Error! Main Document Only.***Tylox*, a class II narcotic, is used "for the relief of moderate to moderately severe pain". *Physician's Desk Reference* 2217 (54th ed. 2000).

[3] **Error! Main Document Only.***Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458

326). On September 14, the doctor fitted Arthur with an ACL brace because of his "persistent pain and discomfort, feelings of instability, giving way and falling;" Plaintiff was still restricted to light duty (Tr. 325).

On October 9, 2007, Arthur underwent an evaluation by his Physical Therapist who determined that he was capable of returning to light duty work (Tr. 303; *see generally* Tr. 303-08). The Therapist noted that there were no self-limiting behaviors during the examination and that he had developed a modified lifting technique with more hip—than knee—flexion to minimize knee pain; she also noted severe crepitus at greater then 60 degrees of knee flexion (Tr. 303). On October 16, Dr. Haas placed Arthur on the following permanent restrictions: no climbing, kneeling, squatting, or working on uneven, slippery, or elevated surfaces; Plaintiff was given a fifteen percent impairment of the left lower extremity and knee and six percent impairment of the whole body (Tr. 324). Arthur was told he could return to light duty and could return to firefighting as a truck driver only (*id.*).

On December 10, 2008, Dr. Haas performed an arthroscopic surgical examination of Arthur's left knee, noting chondral

---

(52nd ed. 1998).

5

defect and early degenerative joint disease (Tr. 348). Eight days later, the surgeon noted that there was mild effusion of the knee, but that it looked fine; there was no calf tenderness (Tr. 346). Haas ordered PT three times a week for two weeks; Percocet[4] was prescribed. On January 21, 2009, the Surgeon noted mild quad and calf atrophy, though there was no swelling; Plaintiff had full ROM with minimal crepitation (Tr. 345). Arthur was to continue with strengthening exercises and could work light duty with no prolonged standing, squatting, kneeling, or climbing (Tr. 345). On March 11, Haas said that the left knee was doing fine, but the right knee was flaring up; the doctor's impression was chondral defect much like he had on the left (Tr. 344). On May 1, 2009, Dr. Haas completed a physical capacities evaluation in which he indicated that Plaintiff had pain which could be reasonably expected to produce pain which would preclude full-time work (Tr. 390-91). It was the doctor's opinion that Arthur could sit for eight hours at a time, but could stand or walk for only two hours during a day and only thirty minutes at a time. Plaintiff would need to rest, at his discretion, during a normal eight-hour day; he could be expected

---

[4]*Percocet* is used for the relief of moderate to moderately severe pain. **Error! Main Document Only.***Physician's Desk Reference* 1125-28 (62nd ed. 2008).

to miss two days of work a month.  Arthur could lift up to only ten pounds on an occasional basis, but had full function in both hands; Plaintiff was severely restricted from stooping and mildly limited in bending at the waist.  He could not use leg controls.  It was Haas's opinion that this condition had been in existence since December 2008.  Haas also stated that Arthur's complaints and symptoms were consistent with clinical findings, noting that he had "popping[,] catching[,] and grinding primarily in the left knee but also [in the] right knee to a lesser degree [which] might improve somewhat (hopefully) after left knee surgery but will definitely have restrictions similar" to what he had set out in the evaluation (Tr. 391).  The Orthopaedic examined Arthur again on August 10, 2009, and found no crepitation in the left leg although there was significant atrophy in the quad and some in the calf as well; the doctor said the only significant pathology was the atrophy which he attributed to muscle loss (Tr. 392).  Haas ordered PT three times a week for three weeks and prescribed Tylox and Mobic, finding that Plaintiff could only do sedentary clerical work.

  At the evidentiary hearing on May 13, 2009, Plaintiff testified that he had arthroscopic surgery on the left knee that morning; Arthur was in a wheelchair at the hearing, but would go

7

to crutches the following week (Tr. 26-29; *see generally* Tr. 26-49). He stated that he had had to quit his job as an assistant restaurant manager because of his knees (Tr. 32-33). Although he has volunteered as a firefighter for years, he has not been able to do anything since his injuries; he could direct traffic for fifteen-to-twenty minutes, maybe once a week, but even this causes pain (Tr. 35, 42). Arthur stated that his condition has gotten progressively worse, that the pain is so bad on some days that he does not get out of bed; the pain is sharp and stabbing although it steadily aches (Tr. 38-39). Generally, he sits in his recliner or lays in bed every day with a pillow underneath his knees (Tr. 39). Plaintiff does no household chores (Tr. 40). Arthur quit going to college because of all the walking he had to do to get to his classes (Tr. 44).

In response to a hypothetical posed by the ALJ, a Vocational Expert (hereinafter *VE*) testified at the hearing that Plaintiff would not be able to perform the work he had performed in the past (Tr. 49-52; *see generally* Tr. 49-56). That hypothetical individual was limited from lifting and carrying any more than ten pounds; the individual was capable of "standing and walking no more than 30 minutes at a time, and no more than two hours in an eight hour work day; no more than

occasional posture activities such as bending, stooping, bending and stooping; and minimal crawling, kneeling and climbing" (Tr. 51). Also, the individual could not operate foot controls (Tr. 51). The VE stated, though, that there were sedentary jobs this person could perform such as a bench assembler, surveillance system monitor, and order clerk (Tr. 52-53). In response to a question as to whether this individual would be allowed to stop work for up to an hour at a time, the VE said the individual would be unemployable; the VE also indicated that a need to miss two days a month would preclude employment (Tr. 53-54). The VE further stated that a person who needed discretionary time to rest would be unemployable (Tr. 54-55).

The ALJ determined that Plaintiff could do a reduced range of sedentary work.[5] More specifically, the ALJ found that he could perform sedentary work as defined,

> except he can lift and/or carry no more than
> 10 pounds; he can stand and walk no more
> than 30 minutes at one time and no more than
> 2 hours in an 8-work day; he can perform no
> more than occasional bending and stooping

---

[5]**Error! Main Document Only.**"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2010).

9

>            and only minimal kneeling, crawling or
>            climbing; he cannot operate foot controls;
>            he can perform no more than one or two step
>            job instructions; he can have no more than
>            minimal contact with the public; and he
>            cannot work with crowds.

(Tr. 14). In reaching this decision, the ALJ found that Arthur's "statements concerning the intensity, persistence and limiting effects of [his impairments] are not credible" (Tr. 15). The ALJ agreed with Dr. Haas's assessment of Plaintiff's physical abilities, though he was "not persuaded by Dr. Haas's opinion regarding 'employee discretion' about needing a rest period throughout a normal 8-hour workday and that claimant would be absent from work about twice a month due to his impairment or treatment" (Tr. 17).

   Plaintiff's first claim, in bringing this action, is that the ALJ erred in finding that he could ambulate effectively. In making this argument, Arthur references his five knee surgeries and sustained physical therapy treatment. He also references the social security regulations which state that "[t]o *ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00B2b (2010).

Arthur relies on his own testimony to bolster this argument. However, Dr. Haas specifically found that he could stand or walk for up to thirty minutes at a time and up to two hours during an eight-hour workday (Tr. 390). The Court finds substantial support for the ALJ's conclusion with regard to this claim.

Arthur also claims that the ALJ did not properly consider his pain. The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.),

11

*vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2010).

The ALJ discounted Plaintiff's testimony that he was, essentially, bedridden (Tr. 38-39). The Court finds substantial support for that determination, based on the report of Arthur's treating physician.

Dr. Haas, on the other hand, stated that although Arthur could do limited sedentary work, the degenerative changes in both knees "could reasonably be expected to produce pain, other symptoms or limitations at a level which would preclude full-time, competitive work activity on a sustained basis" (Tr. 390).

12

Haas went on to say that Plaintiff's complaints or symptoms, which had existed since December 2008, were consistent with his own objective findings of "popping[,] catching[,] and grinding primarily in the left knee but also [in the] right knee to a lesser degree [which] might improve somewhat (hopefully) after left knee surgery but will definitely have restrictions similar" to what he had set out in the evaluation (Tr. 391).

    The ALJ discounted Dr. Haas's opinion that Arthur should have discretion about needing a rest period and would be absent two days a month because of his impairment (Tr. 17).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[6] *see also* 20 C.F.R. § 404.1527 (2010).

    The Court finds that the ALJ erred in discounting Dr. Haas's opinion.  Haas provided objective evidence for his conclusions and there is nothing in the record which contradicts either the evidence or the conclusion.

---

[6]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to

However, it was the doctor's opinion that Arthur's impairments had been at this level of severity since December 2008. The ALJ's decision was rendered in July 2009, less than a year later. "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2010).

While the Court suspects that Plaintiff's condition has shown no improvement since December 2008, that issue—and the corresponding, relevant evidence—is not before this Court. Therefore, though the Court finds that the ALJ committed an error in discrediting the opinion of Arthur's treating physician, the Court finds substantial support for the ALJ's conclusion that Plaintiff has not demonstrated impairments that render him disabled for a period of twelve months.

Plaintiff has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a

---

October 1, 1981.

conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 27th day of October, 2010.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE